Chief Justice Robertson,
delivered the opinion of the court.
On the 27th of August, Í822, Wm. M’Chord and Ambrose Tomlin, entered into an article of agreement, whereby McChord sold and agreed to convey tó Tomlin, a tract of land; to deliver to Him the possession on the 1st of January, 1823; and to be responsible, for the destruction or removal, in the mean time, of any thing appertaining to the land; and Tomlin covenanted to pay $400 presently; and $200 in twelve months, after the surrender to. him, of the possession of the land.
On the 16th of August, 1828, the administrators of McChord, brought this action of .covenant against Tomlin, averring the delivery of the possession of the land to him, by their intestate, on the 1st of January, 1823, and the non-payment of the $200, within twelve months thereafter.
*2 Tomlin filed four pleas, in all of which, he attempted to set up an accord and satisfaction. Demurrers were sustained to the first, third and fourth, and a demurrer being also sustained to the replication to ■the second plea, judgment was rendered for the administrator.
As we consider the first and third pleas, as plainly insufficient, we shall notice only the second and fourth, described in the record, as the third and fifth pleas.
The second plea avers, that on the 4th of October, 1822, the covenant sued on, was “annulled and set aside,” by the payment of the first instalment of $400, by Tomlin to McChord, and by the substitution of a new agreement, in writing, whereby, Tomlin covenanted to pay $200, unconditionally, on the 1st of January, 1824; and McChord agreed to make agen-eral warranty deed for the land, on the 15th of November, 1822; and that before the institution of this suit, the administrators had obtained a decree in chancery, on the last covenant, for the $200, and interest and costs.
The replication, not admitting the allegations of the plea as to the effectof the new agreement, averred that the decree was suspended by supersedeas.
The fourth plea sets out the new covenant, substantially, asit is described in the second plea, and avers that the $400, and the new covenant, (which did not bind McChord to be responsible for waste, as the first did, and which bound Tomlin to pay the $200 on the 1st of January, A 824, whether possession of the land should be given to him on the 1st of January, 1823, or not,) were offered and accepted, in satisfaction of the first covenant.
If the destruction of the first covenant, or of its legal obligation, result as a deduction of law, from the facts alleged in the second plea, that plea is a good plea in bar, although it is deficient in apt and technical form; The new agreement is materially variant from the original one; it is obviously more advantageous to McChord; it entitles'him to the $^00 on the 1st of January, 1824, although he may nob have *3 delivered the possession of the land, on the 1st of January, 1823, It omits the covenant contained in the first, to be responsible for waste; it gave him the $400 in possession, in lieu of his right in action. binds him, we admit, to make a general warranty deed; but a legal construction of the first covenant, bound him for the same kind of a deed. We, therefore, infer that the last covenant was intended as a substitute for the first, and was entered into by the parties with that view.
If a second covenant be received by co-venantee, merely as collateral security for the discharge of an existing covenant; a judgment or decree upon the second covenant will not, without satisfaction, extinguish the obligation of the original covenant.
A second covenant, materially variant from the original covenant; and executed in satisfaction of it, annihilates the obligation of the original covenant.
old rule,.that one covenant ca?“ot ext‘n' fovenant^of1 eqnuldigmty, has been, re-2 ixed by modern decisions.
*3 We know that if the new covenant had been taken merely as a collateral security, a judgment or decree upon it, would not, without satisfaction, merge the first covenant, or extinguish its obligation. Butif it were executed, as we must infer that it was, in substitution and satisfaction of the first; then as the two covenants were materially variant, the last being intended as the evidence, and only evidence of the contract, and especially as a decree has been rendered on it as such, the first should not be held obligatory. After recognizing the last covenant as the true contract, by obtaining a decree for enforcing it, the defendants should not be permitted to resuscitate the the covenant which it has thus annulled and supplanted.
We are consequently, of opinion, that the second plea is substantially good. The replication to it is insufiicent. If the decree had any effect on the first covenant, its suspension by supersedeas, cannot destroy or impair that effect. ' It is still a valid, subsisting decree, and is of higher dignity than the covenant, and must, as long as it remains in force, prevent any other suit on the covenant. And, therefore, for reasons already given, the first covenant must be considered as annulled.
The fourth plea is in proper form, as a plea of accord and satisfaction. As the $400 were paid, and the $200 were not due, the averment that the $400; and the new covenant were given and accepted in satisfaction- of the first agreement, was proper. If, however, this averment be defective, it is so in form only. The simple question presented by this plea is, therefore, whether or not the last covenant had the legal effect of satisfying the first. The payment of *4 the $400, certainly was a legal satisfaction of the covenant to pay that sum, and the only objection which has been, or can be made to the alleged satisfaction of the covenant for the $¡20Qis, that one covenant cannot, according to the ancient doctrine, extinguish another covenant of equal dignity. This old rule is purely technical, and has been relaxed by modern decisions. How far it should still be regarded, has not been directly and authoritatively decided by this court. In Nave vs. Fletcher, IV Litt., 243; and in Burnsides vs. Smith’s executor, IV Mon. 464, the point was presented, but not decided. In each of these cases, the co.urt admitted that modern cases had shaken the ancientdoctrine; and in the last case, in I V Monroe, the opinion intimates, that the modern cases are most consonant with reason and principle.
Acceptance of a chattel in possession, may be a legal satisfaction of a bond or covenant. Any executed accord will be good, unless it appear to be unreasonable. Payment of a less sum, is not a good satis-faclion, unless it be made before the money was due, or at a different place from that at which it was paya; ble.
Delivery of a horse, or other, commodity, may be a good satisfaction of a debt exceeding, its value, because the court cannot determine the value of such chattel, and must presume it was equivalent to the debt, as the creditor' aocepte(i it. a bond may s'irc|pie oon_ tract debt.
*4 The acceptance of a chattel in possesion, may be a legal satisfaction of a bond or covenant. Any executed accord will be good, unless it appear to be unreasonable, Cro. Eli. 194-356; Plow. 5, II Ld. Rayd, 122; I Salkd. 76. A payment of a less sum, is not a good satisfaction, unless it be made before the money was due, or at a different place from that at which it was payable, Bi. Ab. Acc. A. And the delivery of a horse, or other commodity, may be a good satisfaction of a debt, exceeding its value; because the court cannot determine the value of such chattel, and must presume, that it was equivalent to the debt as the creditor accepted, it, Littleton Sec. 344.
It is admitted by all the authorities, that a bond may be a legal satisfaction of a simple contract debt; and that a judgment may be accepted in satisfaction of a debt due by bond. Therefore, one chose in action, may be a good satisfaction of another chose in action, see Watkinson vs. Inglesby et al, V Johnson’s Rep. 390, and. the numerous authorities there cited. See also Shelby vs. Mandeville, VI Crunch, 264; and Holmes et al vs. D. S. Camp, I Johnson’s Rep. 36, in which cases it was decided, that a promissory note, or bill of exchange, may extinguish a pre-existing parol debt, if given and accepted in. satisfaction of it. The principal reason assigned for the doctrine, that one bond cannot operate asa legal satisfaction of another bond is, that as they are of equal dignity. *5 the one cannot be merged in the other, as a.parol contract might be in a bond, or as a bond might be in a judgment; Cro. Eli. 727; Bur. 9.
™pte,rjatát-jsfaction of a ¡*ebí; due by bond.
One chose in goorfLl-¡sfaction of another chose
note, or bill of exchange a preexisting parol an^accepted in satisfaction °f
M one ob. ligation be a !®sal sa6sRe-Üon °£ano". ther ot equat dignity? quaere,
^a^aterT" "lly variant" from the orí. &inal anf <*igeous to co-venantee, “*aybe a the * original covenant*
It has been frequently decided, that a simple obli-Ration for the amount of an original debt, cannot be a good satisfaction of a forfeited penal bond, because, according to tne common law, after forfeiture, the penalty’ was the debt; and therefore, the boud was not for the whole debt; see III Lev. 55-6; V Co. 117; Ld. Rayd. 122-566. Here is a tacit admission, that the first bond, if it had been like the last, single, and not penal; and had been given and accepted in satisfaction of it, might be a valid satisfaction. ’ °
It may be doubted whether these last cases, which .do not decide that one bond cannot extinguish'another, but clearly intimate the contrary, have not been misapplied-to cases to which their reason does¡ not apply, and in that way, made to prove, that one bond cannot be a satisfaction of another, between the same parties, and for the same amount.
Upon principle and analogy, we should decide, if the point be not res adjudicata, that one obliigation may be a legal satisfaction of another obligation of equal dignity, if expressly so agreed by the parties; and therefore so accepted. This would not violate the maxim that a contract can only be destroyed “eo legamine quo ligaturBut we do not feel ourselves now called on to decide between reason, on the one side, and authority on the other; or between the an- . , 7 . , cient cases, which lean one way, and modern cases, which certainly incline towards another. For whatever may be the law, or however it shall' be finally settled by this court; this case does not come within the range of any of the authorities which can be quoted, for showing, that one covenant cannot be pleaded as a satisfaction of another. For those authorities seem to admit that a material change in the contract, advantageous to the obligee, such as shortening the time for payment, or giving other security, may make the new obligation a valid satisfaction of a former one, if intended by the parties; see also Hanson vs. Cowan, VII Monroe, 575. *
This, by the way, is somewhat inconsistent with the reason, which the ancient authorities assign, *6 for deciding that one obligation cannot discharge-another, and tends to the subversion of the old doctrine.
The payment of a part of due "upon a a covenant, and the exe-bondnfor the residuum, payable as made'pa'yable by the covenant, may be faction O^the covenant
Now, in this case, the new covenant is essentially variant from the old one. They both contain various stipulations, reciprocally binding on the parties ; and the last covenant is made more advantageous to McChord than the first. The payment of $400, and covenant to pay the $200, even as soon as the first covenant required the payment, would alone, in our opinion, amount to a good legal satisfaction. This opinion is not inconsistent with the doctrine in Cro. There it was decided, that a payment of part, and a promise to pay the balance still due, did not amount to a legal satisfaction of an obligation, But we are not aware> that it has ever been decided, that the payment of part, and the the execution of a bond for the residuum, payable as soon as it was made PaJable. by the original contract, might not be a good satisfaction of a pre-existing obligation.
Butthe new covenant did nothold McChord responsible for waste, and bound Tomlin to pay the $200 on the lstof January, 1824, although McChord should fail or refuse to surrender the possession of the land. After the execution of this covenant, could Tomlin have maintained an action against McChord, on the first covenant, for any waste which he may have committed? And when sued on the last covenant, could Tomlin have pleaded, that by the first covenant he was not bound to pay the $200, until the expiration of a year from the time when possession should be delivered to him of the land; and that no possession had been given at all, or had been given a [-year prior to the institution of the suit? Now, the rights of the parties must be equal and reciprocal. If Mc-Chord be not bound by the first covenant, Tomlin must not be. The parties had a right to alter or modify their contract, or to rescind it altogether. They have chosen to modify it essentially, by substi-stuting another and different contract, in writing, equally obligatory and effectual. The last covenant furnishes intrinsic evidence, that it was not intended as a supplemental arrangement, or as collateral security; but was intended by the parties, to be the evidence, and only evidence of their contract.
Cáperton> for plaintiff; Turner, for defendant.
Wherefore, the fourth plea is good.;
Judgment reversed,and cause remanded, with in-structioris to sustain the demurrer to the. replication to tbe.iSecond plea, and overrule the demurrer to the fourth plea.